IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY, LLC,** | : | No. 3:10cv1926 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **PETER J. MAXWELL;** **SHARON L. MAXWELL;** **THOMAS B. SMITH; and** **E. LORI SMITH,** | : | |
| Defendants | : | |
| **THOMAS L. SMITH; and** **E. LORI SMITH,** | : | |
| Third-Party Plaintiffs | : | |
| v. | : | |
| **CHESTER G. STEWART,** | : | |
| Third-Party Defendant | : | |

## MEMORANDUM

Before the court is Third-Party Defendant Chester G. Stewart's motion to dismiss the third-party complaint of Thomas and E. Lori Smith. Having been briefed, the matter is ripe for disposition.

**Background**

Plaintiff Ford Motor Company ("Ford") initiated this action by filing a complaint

in this court against Defendants Peter Maxwell, Sharon Maxwell, Lori Smith and Thomas L. Smith.  (See Complaint (Doc. 1) (hereinafter "Complt.")).  Ford alleged that defendants had breached their guaranty of payment on the indebtedness of Heritage Ford, Inc., a dealership in Orwigsburg, Pennsylvania, and sought damages based on that non-payment.  (Id. at ¶¶ 1-2).

Ford filed a complaint in this court and served that complaint on the defendants.  Defendants Sharon and Peter Maxwell did not answer the complaint, and the court granted Ford's motions for default judgment against these parties.  (Docs. 19-20).  Defendants Thomas and Lori Smith ("the Smiths") answered the complaint on December 20, 2010.  On December 16, 2010, the Smiths filed a Third Party Complaint against Chester G. Stewart.  (Doc. 24).  That complaint alleges that the subject of the instant dispute between the Smiths and Ford is an Automotive Wholesale Plan Application for Wholesale Financing and Security Agreement ("Wholesale Agreement") entered into between Ford and Chester Stewart in February 1988.  (Third-Party Complaint (Doc. 24) at ¶ 13-14).  Stewart owned Heritage Ford when he made the agreement.  (Id. at ¶ 15).  The Smiths contend that Stewart remained the only approved dealer for Heritage Ford and the only signatory to the Wholesale Agreement when Ford terminated its sales and service agreement with Heritage in January 2008.  (Id. at ¶ 16).   The Smiths also allege that Stewart executed the security agreement at issue in this case.  (Id. at ¶ 19).

The Smiths aver that they and the Maxwells began negotiations with Stewart

for purchase of Stewart's interest in Heritage in March 2007.  (Id. at ¶ 23).  By April or May 2007 the parties had reached a tentative agreement, subject to proper documentation.  (Id. at ¶ 24).  The Smiths intended throughout the negotiations to operate Heritage as a Ford dealership.  (Id. at ¶ 25).  Stewart allegedly made material misrepresentations and omissions about Heritage's financial condition, Heritage's dealings with Ford Credit, and the process of obtaining Ford's approval for the transfer of ownership during the negotiations.  (Id. at ¶ 26).  The purpose of these misleading statements and omissions was to induce the Smiths to purchase Stewart's interest in Heritage Ford.  (Id. at ¶ 27).  The Smiths executed an agreement for Sale of Stock on July 6, 2007 with Stewart.  (Id. at ¶ 28).   Stewart purported to transfer all of his stock in Heritage to the Smiths for $500,000.  (Id.).  The Smiths would thus hold a majority share of the business.  (Id.).

   After July 6, 2007, the Smiths discovered that Heritage was "out of trust" with Ford and thus not in good financial standing with Ford Credit.  (Id. at ¶ 29).  This discovery was contrary to Stewart's representations.  (Id.).  The Smiths also discovered that, despite Stewart and Maxwell's promises, no arrangements had been made to transfer the franchise agreements for Heritage Ford to the Smiths. (Id. at ¶ 30).  Neither Stewart nor Maxwell had made an effort to effect this transfer. (Id.).  Because of Heritage Ford's financial problems and the failure of Stewart and Maxwell to seek approval of the transfer of ownership, Ford refused to approve the change of ownership in Heritage, and the Smiths were not allowed to operate the

business as a Ford dealership. (Id. at ¶ 31). For the same reasons, Ford suspended Heritage's line of credit in August 2007. (Id. at ¶ 32).

In October 2007 the Smiths signed a continuing guaranty based on representations made by Maxwell. (Id. at ¶ 33). Maxwell led the Smiths to believe that signing the guaranty was necessary as part of the overall process for getting the Smiths approved as Ford dealers. (Id.). Ford cancelled Heritage's floor plan financing program in December 2007. (Id. at ¶ 34).

Ford alleged in its complaint that Heritage defaulted on obligations to Ford Credit under the Wholesale Agreement. (Id. at ¶ 35). Ford alleged that Heritage was "out of trust" and thus had defaulted on the agreement. (Id. at ¶ 36). Further, Ford contended that as soon as Ford Credit discovered Heritage was out of trust, the company took steps to protect its collateral under the Security Agreement. (Id. at ¶ 37). Ford Credit also claims Heritage owes a deficiency after sale of the collateral and application of the proceeds to Heritage's indebtedness. (Id. at ¶ 38). The Smiths contend that this alleged default came under the Wholesale Agreement executed by Stewart on February 1, 1988. (Id. at ¶ 39). Moreover, any material breach of the agreements between Heritage and Ford occurred prior to July 6, 2007, when the Smiths took ownership of Heritage Ford. (Id. at ¶ 40).

The Smiths allege that Heritage sold vehicles subject to Ford Credit's security interest without remitting payment to or holding the proceeds of the sales in trust for Ford Credit. (Id. at ¶ 41). They also allege that Stewart and/or Maxwell knowingly

4

withheld form Ford payments received by Heritage for vehicles sold.  (Id. at ¶ 42).
These actions violated the agreements between Heritage and Ford Credit.  (Id.).
The actions also put Heritage "out of trust" with Ford.  (Id.).  The Smiths did not
cause this situation, nor did they take any action which otherwise caused any default
with Ford.  (Id. at ¶ 43).

Thus, none of the actions taken by the Smiths led to a default on Heritage's
Wholesale Agreement with Ford.  (Id. at ¶ 44).  No action taken by Heritage, the
Smiths claim, could be their responsibility, since the transfer of ownership of
Heritage was premised on material misrepresentations by Stewart and/or Maxwell.
(Id. at ¶ 45).  On January 15, 2008, the Smiths' counsel informed Ford Credit that
the Smiths would not pay for the indebtedness allegedly run up by Smith and
Maxwell.  (Id. at ¶ 46).

The Smiths third-party complaint contains three counts.  Count I alleges that
liability to Ford Credit under the wholesale agreement resides with Stewart and not
the Smiths and seeks a finding from the court that Stewart is solely liable to Ford
Credit for all amounts related to the agreement.  Count II alleges that the alleged
default giving rise to Ford's claims is Stewart's fault, and contends that Stewart
should indemnify the Smiths for any liabilty assigned to them in judgment.  Count III
seeks contribution from Stewart on Ford's claim under the continuing guarantee.

After the Smiths served this third-party complaint, Stewart filed the instant
motion to dismiss.  The parties then briefed the issues, bringing the case to its

5

present posture.

**Jurisdiction**

The original complaint in this case involves a controversy between parties from different states. The amount in controversy exceeds $75,000. As such, the court has jurisdiction over the original complaint pursuant to 28 U.S.C. § 1332. The claims in the third-party complaint are "so related to claims in the action within" the court's original jurisdiction "that they form part of the same case or controversy," and the court therefore has jurisdiction over the third-party complaint as well. 28 U.S.C. § 1367(a).

**Legal Standard**

Defendant seeks dismissal of the complaint pursuant to both Federal Rule of Civil Procedure 12(b)(6). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does

6

not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

**Discussion**

   **A. Personal Liability Against Chester G. Stewart**

Stewart argues that the third-party complaint against him should be dismissed because the Smiths do not allege any facts by which Stewart could be held individually liable. Stewart complains that "the Smiths do not attach any documents to the Third-Party Complaint to suggest any such personal liability," and attaches documents to his motion he claims demonstrate that he made agreements for

7

Heritage Ford and not in his individual capacity. Moreover, the complaint does not allege any facts to support the Smiths' allegations that Stewart made material misrepresentations regarding the condition of the dealership before the sale.

The Smiths contend that Stewart can be held personally liable for their claims because he owned more than ninety percent of Heritage's stock and executed agreements on behalf of the Heritage. Ford Credit considered Stewart the dealer, and not Heritage Ford. Finally, even if the court were to consider Heritage Ford as the proper party here, the equities of the situation require piercing the corporate veil and allowing suit against Stewart. In Pennsylvania, "a corporation . . . is normally regarded as a legal entity separate and distinct from its shareholders." Ashley v. Ashley, 393 A.2d 637, 641 (Pa. 1978). "This legal fiction of a separate corporate entity was designed to serve convenience and justice." Id. As such, the corporate form "will be disregarded whenever justice or public policy demand and when the rights of innocent parties are not prejudice nor the theory of the corporate entity rendered useless." Id. This holding has created a "flexible" standard, and courts in Pennsylvania have concluded that "no finding of fraud or illegality is required before the corporate veil may be pierced, but rather, that the corporate entity may be disregarded 'whenever it is necessary to avoid injustice.'" Ragan v. Tri-County Excavating, Inc., 62 F.3d 501, 508 (3d Cir. 1995) (quoting Rinck v. Rinck, 526 A.2d 1221, 1223 (Pa. Super. Ct. 1987)). Still, "[t]he corporate entity or personality will be disregarded only when the entity is used to defeat public convenience, justify wrong,

8

protect fraud or defend crime." Kellytown Co. v. Williams, 426 A.2d 663, 668 (Pa. Super. Ct. 1981) (quoting Sams v. Redevelopment Authority, 244 A.2d 779 (Pa. 1968)).

The Smiths have alleged that Stewart committed fraud against them by misrepresenting the condition of Heritage Ford and the relationship between the dealer and Ford Credit.  Stewart then sold Heritage Ford to the plaintiffs.  The parties agree that he signed documents on behalf of the corporation in his dealings with the Smiths.  The Smiths must therefore pierce the corporate veil to make Stewart liable for Heritage's actions.  The court notes that "[e]ven when a corporation is owned by one person or family, the corporate form shields the individual members of the corporation from person or family, the corporate form shields the individual members of the corporation from personal liability and will be disregarded only when it is abused to permit perpetration of a fraud or other illegality." Kellytown, 426 A.2d at 668.  Thus, the mere presence of Stewart as the sole owner of Heritage Ford would not mandate piercing the corporate veil.  The allegations in the third-party complaint, are sufficient to do so.  The Smiths allege that they purchased Heritage Ford after Stewart fraudulently induced them to do so by making misrepresentations about the company's financial condition.  Assuming these allegations to be true, allowing the corporate form to shield Stewart from liability on this matter would be to allow him to use the corporate form to protect a fraud.  The court will therefore deny the motion on these grounds.

9

**B. Violation of Rule 14**

Stewart argues that Count I of the third-party complaint should be dismissed because the Smiths, as defendants, improperly allege that Stewart is liable to the original plaintiff, and not to them. Federal Rule of Civil Procedure 14, Stewart contends, prohibits use of a third-party complaint for such purposes. The Smiths likewise cannot pursue joinder against Stewart, since joinder is unavailable against a third party solely and directly liable to the original plaintiff.

Federal Rule of Civil Procedure 14 permits the filing of third-party complaints. That rule provides that "[a] defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." FED. R. CIV. P. 14(a)(1). The purpose of this rule is "to provide a mechanism for disposing of multiple claims arising from a single set of facts in one action expeditiously and economically." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1442. Moreover, "a court, called upon to exercise its discretion as to impleader, must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications of the case." Somportex Limited v. Philadelphia Chewing Gum Corp., 453 F.2d 435, 440 n.6 (3d Cir. 1971). Courts have concluded that "as long as a third-party action falls within the general contuours limned by Rule 14(a), does not contravene customary jurisdictional and venue requirements, and will not work unfair prejudice, a district court should not preclude its prosecution." Lehman v. Revolution

10

Portfolio LLC, 166 F.3d 389, 395 (1st Cir. 1999); see also, Marseilles Hydro Power, LLC v. Marseilles Land and Water Co., 299 F.3d 643, 650 (7th Cir. 2002).

Stewart's position is that the Smiths assert liability for Ford Credit, and that a third-party plaintiff must assert liability on her own behalf, not that of the plaintiff in the original action. In response, the Smiths argue that "[a]lthough this claim appears to assert direct liability on behalf of Ford Credit, it is intended to assert Stewart's liability as the principal debtor" to plaintiffs as guarantors to Ford Credit. As the court reads the Smiths' statement, they agree with Stewart that they would have no claim if they were asserting Ford Credit's rights in this matter. Count I is, however, intended to raise a claim against Stewart on the Smith's behalf based on his alleged misrepresentations and omissions in negotiating the sale of Heritage Ford. They insist that Stewart is liable to them for his conduct in the negotiations surrounding the sale, and seek damages based on Stewart's conduct. The claim in Count I, however, asks the court to find Stewart, not the Smiths, liable to Ford Credit. Since the Smiths apparently agree that they must seek liability from Stewart on their behalf, not Ford Credit's, the court will grant the motion here without prejudice to the Smiths filing an amended complaint that states a claim against Stewart directly for his conduct in the sale of Heritage Ford. The court allows the Smiths to re-file their complaint out of consideration for the purposes of Rule 14.

**C. Count II**

Stewart likewise contends that Count II of the complaint against him should be

11

dismissed. The Smiths seek indemnity in this count, and they have not satisfied the contractual requirements to make out an indemnification claim under Pennsylvania law, nor can they show that liability for Ford Credit's claims rests with Stewart. Indemnification "is a common law equitable remedy that shifts the entire responsibility for damages from a party who, without any fault, has been required to pay because of a legal relationship to the party at fault." City of Wilkes-Barre v. Kaminski Bros., Inc., 804 A.2d 89, 92 (Pa. Commw. Ct. 2002). In Pennsylvania, "[t]he right of *indemnity* rests upon a difference between the primary and the secondary liability of two persons each of whom is made responsible by the law to an injured party." Builders Supply Company v. McCabe, 77 A.2d 368, 370 (Pa. 1951) (emphasis in original). Indemnity "enures to a person who, without active fault on his own part, has been compelled, by reason of some legal obligation, to pay damages occasioned by the initial negligence of another, and for which he himself is only secondarily liable." Id. Under the common law, "indemnity is not a fault sharing mechanism between one who was predominantly responsible for an accident and one whose negligence was relatively minor." Sirianni v. Nugent Bros., Inc., 506 A.2d 868, 871 (Pa. 1986). Instead, indemnity serves as "a fault shifting mechanism, operable only when a defendant who has been held liable to a plaintiff solely by operation of law, seeks to recover his loss from a defendant who was actually responsible for the accident which occasioned the loss." Id. In Pennsylvania, a party may be indemnified "(1) where primary versus secondary or vicarious liability is

present or (2) where there is an express contract to indemnify." <u>Richardson v. John F. Kennedy Memorial Hosp.</u>, 838 F. Supp. 979, 989 (E.D. Pa. 1993).

The Smiths do not argue that the parties had an express contract to indemnify, but instead insist that any liability they owe Ford Credit is secondary to Stewart's liability and indemnity is thus owed them. The Pennsylvania Supreme Court has found that "[S]econdary as distinguished from primary liability rests upon a fault that is imputed or constructive only, being based on some legal relation between the parties, or arising from some positive rule of common or statutory law or because of a failure to discover or correct a defect or remedy a dangerous condition caused by the act of one primarily responsible." <u>Sirianni</u>, 506 A.2d at 871 (quoting <u>Builders Supply Co.</u>, 77 A.2d at 371). Courts have found indemnity applicable in numerous situations: "an employer may secure indemnification from a negligent employee; a retailer has a right of indemnity against a negligent wholesaler or manufacturer; a property owner could recover from a contractor who failed to perform specified duties and thereby caused an injury to another; or a municipality with a duty to ensure that property owners maintain sidewalks may be indemnified by a property owner who failed to maintain a sidewalk that caused an injury to a passerby." <u>Morris v. Lenihan</u>, 192 F.R.D. 484, 489 (E.D. Pa. 2000). Moreover, "to be entitled to common law indemnity, [plaintiff] must be without fault." <u>Bird Hill Farms, Inc. v. U.S. Cargo & Courier Service, Inc.</u>, 845 A.2d 900, 908 (Pa. Super. Ct. 2004).

The Smiths argue that if they are held liable to Ford Credit for their promises

13

to guaranty the obligations of Heritage Ford, that obligation will be a result of Stewart's operation of the delership and not due any fault on their part. Stewart made intentional and material misrepresentations to obtain an agreement with the Smiths. Stewart's misrepresentations and omissions caused the Smiths to guaranty Heritage Ford's obligations to Ford Credit. Thus, since the indebtedness of Heritage Ford was caused by Stewart's actions, not the Smiths, Stewart should be responsible for any damages owed Ford.

The problem with the Smiths' position here, even accepting all of their allegations as true, is that no obligation to pay Ford would exist if the Smiths had not reached an agreement to purchase Heritage Ford and later to guaranty the dealership's obligations to Ford Credit. This agreement came after Stewart had already incurred the obligations to Ford Credit. The Smiths admit that–whether fraudulently induced to do so or not–they agreed to purchase Stewart's interest in Heritage Ford. With that purchase came both the assets and liabilities of the dealership, and any legal obligations that flowed from those assets and liabilities. After they reached that agreement, they discovered that the dealership had undisclosed obligations that undermined their ability to operate the business. The situation here is not like the situation in a typical indemnity case: the Smiths were not employers forced to guarantee quality of work that they did not perform or compensate victims of another's negligence. Instead, if they are found liable here they will be forced to meet the obligations of a guaranty that they executed after they

14

reached an agreement to purchase Heritage from Stewart. There is no agency relationship between the Smiths and Stewart that exposes the Smiths to liability for actions taken by Stewart. Instead, the Smiths made a bad deal in purchasing Heritage Ford and seek indemnity from Stewart for the results of that bad bargain. Indemnity does not work that way under Pennsylvania law. While the Smiths may have a fraud or a contract claim against Stewart, they cannot obtain indemnification from Stewart for their separate and distinct contractual obligations to Ford. The court will grant the motion on this claim.

### D. Count III

Stewart also seeks dismissal of plaintiff's contribution claim in Count III. He argues that since the parties are not joint tortfeasors, the Smiths cannot seek contribution. Moreover, contribution is unavailable to defendants in a breach-of-contract case. The Smiths do not respond to this portion of the motion, and apparently do not oppose the motion on this count. In any case, they could not prevail and obtain contribution on a breach of contract claim against them, since "[i]t is well established . . . that 'a defendant cannot make a third-party claim for contribution for intentional acts.'" Britt v. May Dept. Stores Co., 1994 WL 585930, at *3 (E.D. Pa. Oct. 14, 1994) (quoting In re One Meridian Plaza Fire Litigation, 820 F. Supp. , 1492, 1496 (E.D. Pa. 1993)). "There is no right of contribution in favor of any tortfeasor who has intentionally caused the harm." REST. (2D) OF TORTS § 866A(3). Moreover, "[a] claim for contribution is only proper under Pennsylvania law when it

arises between joint tortfeasors." National Railroad Passenger Corp. v. URS Corp., 528 F. Supp. 2d 525, 531 (E.D. Pa. 2007).  The Smiths do not allege that they are joint tortfeasors with Stewart.  The court will therefore grant the motion on this claim.

**Conclusion**

For the reasons stated above, the court will grant the motion without prejudice to the Smiths bringing a claim against Stewart that asserts direct liability to the Smiths for his actions.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FORD MOTOR CREDIT COMPANY, LLC,** | : | No. 3:10cv1926 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **PETER J. MAXWELL;** **SHARON L. MAXWELL;** **THOMAS B. SMITH; and** **E. LORI SMITH,** | : | |
| Defendants | : | |
| **THOMAS L. SMITH; and** **E. LORI SMITH,** | : | |
| Third-Party Plaintiffs | : | |
| v. | : | |
| **CHESTER G. STEWART,** | : | |
| Third-Party Defendant | : | |

## ORDER

**AND NOW,** to wit, this 27th day of July 2011, Thid-Party Defendant Chester Stewart's motion to dismiss (Doc. 46) is hereby **GRANTED** without prejudice to Thomas Smith and Lori Smith filing an amended third-party complaint that states a claim directly against Chester Stewart.

17

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**