THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FORD MOTOR CREDIT CO. LLC | : |
| Plaintiff | : |
| v. | : 3:10-CV-1926 |
| | : (JUDGE MARIANI) |
| PETER J. MAXWELL. et al., | : |
| Defendants | : |
| v. | : |
| CHESTER STEWART | : |
| Third Party Defendant | : |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Third-Party Defendant Chester Stewart's Motion to Dismiss. (Doc. 57). For the reasons that follow, the Court will grant it in part and deny it in part.

### II. Factual Background

As of 2007, Chester Stewart owned 91% of the shares of a Ford dealership (Heritage Ford, Inc.) in Orwigsburg, PA. Peter Maxwell owned the remaining 9%. On July 6, 2007, Stewart sold his shares to the Smiths and Peter Maxwell for $500,000. ("Stock Sale Agreement," Doc. 57, Ex. I). Since at least February 1, 1988, Heritage financed its purchases of new and used cars with Ford Motor Credit ("FMC") under an Automotive

Wholesale Plan Application for Wholesale Financing and Security Agreement. ("Wholesale Agreement," Doc. 1, Ex. A). Under the Wholesale Agreement, Heritage was required to pay FMC the balance of any advances, together with unpaid interest and flat charges, for any financed vehicle at or before the date on which it was sold. (*Id.*). Stewart also signed the Ford Sales and Service Agreement ("Sales Agreement," Doc. 52, Ex. A), whereby FMC would be required to approve any transfer of stock ownership. Finally, FMC retained a security interest in "[a]ll motor vehicles, tractors, trailers, implements, service parts and accessories and other inventory of every kind." (Doc. 1, Ex. B). Stewart was the only signatory on behalf of Heritage to all three agreements.

In the Stock Sale Agreement, Stewart is referred to as the "Seller," while the Smiths and Peter Maxwell were together referred to as the "Buyers." (Stock Sale Agreement, Doc. 57, Ex. I, at 1). Under the section entitled "Buyers' Representations," the agreement stated, "Buyers have had full and unrestricted access to the books and records of Heritage and Kia and have complete knowledge of the financial condition, assets and liabilities of Heritage." (*Id.* at ¶ 5A). In that same section, "Maxwell acknowledges that he has been an active participant in the management of Heritage and Kia and that he is fully familiar with its financial condition, assets and liabilities. Smith agrees and acknowledges that he shall be charged with such knowledge as a result of his relationship to Maxwell." (*Id.* at ¶ 5B). Finally, the Buyers stated they were "not relying on any representation or warranty of the Seller other than those contained in this Agreement, but rely on their own independent

knowledge and investigation of the subject matter of this transaction as the Buyers shall have determined to be appropriate." There was an integration clause in the agreement, as well. (*Id.* at ¶ 8). On October 1, 2007, the Smiths and Maxwells executed and delivered Continuing Guaranties to FMC, personally obligating them to pay any balance under the Wholesale Agreement. (Doc. 1, Ex. C, Doc. 57, Ex. K). In December 2007, Heritage defaulted on its Continuing Guaranties to make payments under the Wholesale Agreement with FMC.

The Smith Defendants impleaded Chester Stewart as a third-party defendant on December 16, 2010, asserting claims of Stewart's direct liability to Ford, indemnification, and contribution (Doc. 24). In April 2011, Judge Munley granted Stewart's Motion to Dismiss (Doc. 51) and dismissed the Smiths' claims against Stewart without prejudice. In that same order, he granted leave to the Smiths to file an amended complaint against Stewart stating a claim directly against Stewart. On August 17, 2011, the Smiths filed their Amended Third Party Complaint (Doc. 52), asserting claims of (1) breach of contract, (2) *quantum meruit*, (3) fraudulent misrepresentation, (4) negligent misrepresentation, and (5) *respondeat superior*.

### III. Analysis

#### A. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 129 S.Ct. at 1949). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211. As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted).

### B. Fraudulent and Negligent Misrepresentation (Counts III and IV)

Both tort claims are barred by the two-year statute of limitations governing the torts of fraudulent and negligent misrepresentation. 42 PA. CONS. STAT. § 5524(7). The Smiths filed their Amended Third Party Complaint on August 17, 2011, which related back to their Third Party Complaint filed on December 16, 2010 under FED. R. CIV. P. 15(c)(1)(B). The Stock Sale Agreement was signed on July 7, 2007, and so the Smiths are time-barred from bringing these counts against Stewart. The Court will dismiss both the fraudulent and negligent misrepresentation counts against Stewart.

## C. Punitive Damages

As stated above, the tort claims are time-barred. Because punitive damages are unavailable against Stewart on a contractual basis, *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 882 (Pa. 2007), the Court will dismiss this claim against Stewart, as well.

## D. *Respondeat Superior* (Count V)

*Respondeat superior* is "a means of imputing liability to an employer for the actions of its agents, servants, or employees." *Care v. Reading Hosp. and Med. Ctr.*, 2004 WL 728532, at *12 (E.D. Pa. Mar. 31, 2004). This is not an independent cause of action under Pennsylvania law, nor is there any evidence to suggest that Peter Maxwell was acting as Stewart's agent in executing the Stock Sale Agreement. In fact, Maxwell is characterized as a Buyer along with the Smiths. (Doc. 57, Ex. I, at 1). Because there is no basis for *respondeat superior* liability here, the Court will dismiss this claim.

## E. *Quantum Meruit* (Count II)

Though a party cannot *recover* under both breach of contract and *quantum meruit* theories, it is not precluded from *pleading* both as alternative avenues for relief. *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969-70 (Pa Super. Ct. 2009). *Lugo* goes on to say, however, that "theories of breach of contract and unjust enrichment must be pleaded alternatively in order to allow recovery under the latter theory *where an express contract cannot be proven.*" *Id.* at 970 (emphasis added).

In this case, Stewart does not dispute the existence of an express contract (i.e. Stock Sale Agreement). Both parties agree that there is an express contract, so the issue is not in doubt. Because an express contract exists, *quantum meruit* is not an appropriate cause of action and this count against Stewart will be dismissed. *See Braun v. Wal-Mart*, 24 A.3d 875, 896-97 (Pa. Super. Ct. 2011).

### F. Breach of Contract (Count I)

*Parol evidence*

Stewart interprets the breach of contract claim (Count I) as predicated on fraudulent statements that the Smiths claim induced them to enter the contract. To the extent that the Smiths seek to introduce parol evidence of Stewart's alleged representations before they executed the Stock Sale Agreement, Stewart argues that the integration clause in the contract precludes the admission of any prior statements.

Both Pennsylvania case law and Third Circuit law support Stewart's position that allegations of fraud in the inducement are precluded by the presence of an integration clause, whereas allegations of fraud in the execution are admissible to show a vital term was omitted in the contract.

> [W]here the assertions put forth by one party are specifically contradicted by the written agreement, . . . parol evidence is admissible only to prove fraud in the execution, not the inducement, of the contract. A party cannot justifiably rely upon prior oral representations, yet sign a contract denying the existence of those representations. If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely,

6

and they should have omitted the provisions which they now desire to repudiate and nullify.

*1726 Cherry St. P'ship v. Bell Atl. Prop., Inc.*, 653 A.2d 663, 669 (Pa. Super. Ct. 1995) (internal citations omitted); *see also HCB Contractors v. Liberty Place Hotel Assocs.*, 652 A.2d 1278, 1280 (Pa. 1995) ("[T]he integration clause of the contract expressly overrides all prior oral representations."). Otherwise, the parol evidence rule "would become a mockery." *HCB*, 652 A.2d at 1279. *See also Dayhoff v. HJ Heinz Co.*, 86 F.3d 1287, 1300 (3d Cir. 1996).

Nowhere in the Amended Third Party Complaint do the Smiths allege that a vital term was omitted by fraud, meaning their claim is based on fraud in the inducement. Because the contract included an integration clause, the Smiths are precluded from asserting a fraud in the inducement claim, and the Court will not permit the use of parol evidence to prove this claim against Stewart.

*Breach of Terms of Stock Sale Agreement*

Alternatively, the Smiths argue that Stewart violated the terms of the contract itself.[1] Specifically, the Smiths allege that, among others, Stewart violated ¶¶ 4(F), 4(H), 4(N), and 4(O) of the Stock Sale Agreement. ¶ 4(F) warrants that Stewart had good and marketable title to all personal property, free of all encumbrances (including liens and security interests)

---

[1] Stewart alleges that this claim is time-barred, as well. Breach-of-contract claims are governed by a four-year statute of limitations. 42 PA. CONS. STAT. § 5525(a)(8). The Court has already noted that the Smiths filed their Amended Third Party Complaint on August 17, 2011, which relates back to the Third Party Complaint they filed on December 16, 2010. Any claims arising from events occurring before December 16, 2006 are time-barred. Because the Stock Sale Agreement was signed on July 6, 2007, the Smiths are within the statute of limitations.

whatsoever. ¶ 4(H) warrants there are no undisclosed liabilities, except as incurred consistent with past business practice. ¶ 4(N) warrants that Stewart has not made any material omissions or untrue statements of facts, and ¶ 4(O) warrants that all corporate and financial information provided by Stewart to the Smiths is true and accurate.

The Smiths contend that in violation of ¶ 4(N), (O), Stewart did not disclose the existence of the Sales Agreement with FMC. (Doc. 52, ¶ 39). The Smiths allege Stewart also owed in excess of $266,000 to FMC for ten cars he had sold before the Stock Sale Agreement was signed (Doc. 52, ¶ 49-51), but did not disclose these liabilities in violation of ¶ 4(F), (H).

These provisions conflict with ¶ 5(B), in which the Buyers warrant that Maxwell is "fully familiar with [Heritage's] financial condition, assets and liabilities. Smith agrees and acknowledges that he shall be charged with such knowledge as a result of his relationship to Maxwell." Elsewhere, the Buyers warrant they have had full access to the financial records of Heritage.

Though Maxwell was not a signatory to the Wholesale Agreement or the Sales Agreement, his name is on the latter as a minority shareholder, so the representation in ¶ 5(B) may impute the awareness of the agreements' existence to the Smiths. Furthermore, Stewart argues that the allegedly undisclosed liabilities on the ten cars he sold were "incurred consistent with past business practice," namely, his practice with FMC under the Wholesale Agreement. Therefore, according to Stewart, he had no additional duty to

8

disclose those obligations because the Smiths should already have been aware of them based on their independent review of the financial records and Maxwell's knowledge of Heritage's financial condition.

In summary, there is a factual dispute arising from the conflicting provisions of the Stock Sale Agreement. The Smiths claim they were unaware that FMC's approval was required before a transfer of ownership could take place, as stated in the Sales Agreement. They were similarly unaware that there was liability to FMC on ten cars Stewart had previously sold under the Wholesale Agreement. Finally, they claim that Stewart's warranty that he had good title to all the personal property was false because he had granted a security interest in all vehicles to FMC in 1988 under the Security Agreement. Stewart contends that the Smiths should have been aware of all of these arrangements because they represented in the Stock Sale Agreement they had independently reviewed all the books and records of Heritage and they were imputed with knowing everything that Maxwell knew. On a motion to dismiss, the Court presumes all of the facts alleged in the complaint as true. As such, at this time, it is premature to dismiss the breach of contract claim. Therefore, the Court will deny Stewart's motion on this claim.

### G. Abstention Due to Parallel State Court Action

Stewart argues that the Court should abstain from exercising jurisdiction over the Smiths' claims against him under the *Colorado River* abstention doctrine, which exists for the rare occasion when a federal court runs the risk of entering a judgment that could

conflict or interfere with a parallel state court judgment. *Colorado River Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); *see also Moses H. Cone Mem. Hosp.* v. *Mercury Const. Corp*, 460 U.S. 1, 15–16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Federal courts, however, have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236 (internal quotations omitted).

The factors that the Supreme Court outlined in *Colorado River* do not warrant abstention in this case. It appears that significant progress has *not* been made in the state court action among the Smiths, Maxwells, and Stewart, perhaps for the same reasons that this case has stalled. The other factors, even those favoring Stewart, do not weigh so heavily in favor of him as to mandate this Court's abstention. Although Pennsylvania law controls, the Court of Common Pleas of Schuylkill County can adequately protect the parties' interests, and the Smiths asserted the same breach of contract claim against Stewart in state court, the Court will not refrain from exercising jurisdiction over the Smiths' sole remaining claim against Stewart because of the heavy presumption against abstention.

## IV. Conclusion

The Court will grant Stewart's motion to dismiss Counts II-V (*quantum meruit*, fraudulent misrepresentation, negligent misrepresentation, and *respondeat superior*) of the Smiths' Amended Third Party Complaint against him but will deny the motion to dismiss

Count I (breach of contract) based on the terms of the contract alone. No parol evidence will be admissible to explain or modify the terms of the contract. A separate order follows.

Robert D. Mariani
United States District Judge