**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **FORD MOTOR CREDIT CO. LLC** | : | |
| | : | |
| **Plaintiff** | : | |
| **v.** | : | **3:10-CV-1926** |
| | : | **(JUDGE MARIANI)** |
| **PETER J. MAXWELL** *et al.*, | : | |
| | : | |
| **Defendants** | : | |
| **v.** | : | |
| | : | |
| **CHESTER STEWART** | : | |
| | : | |
| **Third Party Defendant** | : | |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Third-Party Defendant Chester Stewart's ("Stewart") Motion for Attorneys' Fees pursuant to 28 U.S.C. § 1927 (Doc. 127). The Motion has been briefed by Stewart and Defendant/Third-Party Plaintiff Thomas and Lori Smith ("Smiths"). Plaintiff Ford Motor Credit ("FMC") and Defendants Peter and Sharon Maxwell ("Maxwells") have not filed briefs. For the reasons that follow, the Court will deny Stewart's Motion.

### II. Background

Because the facts of record have been summarized by this Court in three separate memoranda (*see* Doc. 51 (granting Stewart's Motion to Dismiss the Smiths' Third-Party Complaint); Doc. 90 (granting in part and denying in part Stewart's Motion to Dismiss Defendant Smith's Amended Third-Party Complaint) and Doc. 120 (granting FMC and

Stewart's Motions for Summary Judgment); the Court will only outline the facts and procedural history essential to this Memorandum Opinion.

This case arose out of a Complaint filed by FMC alleging a breach of contract claim against the Smith and Maxwell Defendants. (Doc. 1). Smith Defendants filed a Third-Party Complaint (Doc. 24) against Stewart on December 16, 2010 relating to a Stock Sale Agreement between Stewart as seller and the Smith and Maxwell Defendants as buyers. On March 15, 2011, Stewart filed a Motion to Dismiss the Third-Party Complaint (Doc. 46), which Judge Munley granted on July 27, 2011 with leave to amend (Doc. 51).

On August 17, 2011, the Smith Defendants subsequently filed a five-count, Amended Third-Party Complaint (Doc. 52) against Stewart, asserting claims of (1) breach of contract, (2) *quantum meruit*, (3) fraudulent misrepresentation, (4) negligent misrepresentation and (5) *respondeat superior*. Stewart filed a Motion to Dismiss the Amended Third-Party Complaint on September 16, 2011. (Doc. 57). On November 14, 2011, the case was reassigned to the undersigned.

On May 14, 2012, the Court granted Stewart's Motion in part and denied it in part. (Doc. 91). Specifically, the Court's May 14, 2012 Order dismissed Counts II-V, but allowed the Smiths to proceed with their breach of contact claim (Count I). (*Id.*). With regard to the Smiths' breach of contract claim, the May 14, 2012 Opinion stated:

> Specifically, the Smiths allege that, among others, Stewart violated ¶¶ 4(F), 4(H), 4(N), and 4(O) of the Stock Sale Agreement. ¶ 4(F) warrants that Stewart had good and marketable title to all personal property, free of all encumbrances (including liens and security interests) whatsoever. ¶ 4(H)

> warrants there are no undisclosed liabilities, except as incurred consistent with past business practice. ¶ 4(N) warrants that Stewart has not made any material omissions or untrue statements of facts, and ¶ 4(O) warrants that all corporate and financial information provided by Stewart to the Smiths is true and accurate.
>
> The Smiths contend that in violation of ¶ 4(N), (O), Stewart did not disclose the existence of the Sales Agreement with FMC. (Doc. 52, ¶ 39). The Smiths allege Stewart also owed in excess of $266,000 to FMC for ten cars he had sold before the Stock Sale Agreement was signed (Doc. 52, ¶ 49-51), but did not disclose these liabilities in violation of ¶ 4(F), (H).

(Doc. 90 at 7-8).

Although the Court noted that "[t]hese provisions conflict with ¶ 5(B), in which the Buyers warrant that Maxwell is 'fully familiar with [Heritage's] financial condition, assets and liabilities,'" and further warrant that "'Smith agrees and acknowledges that he shall be charged with such knowledge as a result of his relationship to Maxwell,'" the Court concluded,

> [T]here is a factual dispute arising from the conflicting provisions of the Stock Sale Agreement. The Smiths claim they were unaware that FMC's approval was required before a transfer of ownership could take place, as stated in the Sales Agreement. They were similarly unaware that there was liability to FMC on ten cars Stewart had previously sold under the Wholesale Agreement. Finally, they claim that Stewart's warranty that he had good title to all the personal property was false because he had granted a security interest in all vehicles to FMC in 1988 under the Security Agreement. Stewart contends that the Smiths should have been aware of all of these arrangements because they represented in the Stock Sale Agreement they had independently reviewed all the books and records of Heritage and they were imputed with knowing everything that Maxwell knew. On a motion to dismiss, the Court presumes all of the facts alleged in the complaint as true. As such, at this time, it is premature to dismiss the breach of contract claim.

(*Id.* at 8-9).

After discovery concluded, FMC (Doc. 101) and Stewart (Doc. 99) filed Summary Judgment Motions. On September 6, 2013, the Court issued an Order (Doc. 120) granting both motions.

## III. <u>Analysis</u>

28 U.S.C. § 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

§ 1927 operates as an exception to the general rule of litigation in the United States, the "American rule." "Under the American rule, each party must bear its own expenses during litigation. Attorneys' fees are not ordinarily recoverable by the prevailing litigant in the absence of statutory authorization." *Browning v. Kramer*, 931 F.2d 340, 344-45 (5th Cir. 1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S. Ct. 1612, 1616, 44 L.Ed.2d 141 (1975)). Indeed, even § 1927 "does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total costs of the litigation." *Id.* (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 756 n. 3, 100 S. Ct. 2455, 2459 n. 3, 65 L.Ed.2d 488 (1980)).

Instead, "the principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101 (3d Cir. 2008). The sanctions "are limited to the costs that result from

such [intentional and unnecessary] delay." *LaSalle Nat. Bank v. First Connecticut Holding Group, LLC.*, 287 F.3d 279, 288 (3d Cir. 2002). The Third Circuit Court of Appeals has stated, "courts should exercise this sanctioning power only in instances of a serious and studied disregard for the orderly process of justice." *Id.* "The power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Id.*

"Section 1927 requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Id.* The Third Circuit has held that, unlike Rule 11 sanctions, "sanctions may not be imposed under § 1927 absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). "As such, under § 1927, an attorney's conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Id.* "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential Ins. Co. America Sales Practice Litigation*, 278 F.3d 175, 188 (3d Cir. 2002).

"However, that finding need not be explicit. An implicit finding of bad faith will support sanctions just as well so long as it is not an abuse of discretion, not based upon clearly erroneous factual findings, and not based upon an error of law." *Id.* at 189 (affirming district court judge's award of sanctions "based [on] his finding of the requisite bad faith and vexatious conduct on the totality of the campaign Malakoff waged during the course of this litigation, not upon any single maneuver."). "But there are distinctions between Rule 11 (and Bankruptcy Rule 9011) and § 1927, distinctions which make a difference." *Schaefer*, 542 F.3d at 101. For instance, "§ 1927 explicitly covers only the multiplication of proceedings that prolong the litigation of a case and likely not the initial pleading, as the proceedings in a case cannot be multiplied until there *is* a case." *Id.* (emphasis in original). As such, the Third Circuit concluded that the supervisory rule pertaining to Rule 11 sanctions did not apply to Section 1927 sanctions. *Id.* at 101-02 ("Unlike Rule 11, the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied.").

Stewart asserts that because the "Smiths lacked any legal or factual basis for their-party claims against Stewart" from the outset of the litigation, the Smith's Third-Party Complaint was "frivolous" and "vexatiously" filed. (Stewart's Br. in Supp., Doc. 130, at 2). The Smiths counter that Stewart's Motion is belied by the fact that the Original Third-Party Complaint was dismissed with leave to amend and that Count I of the Amended Third-Party

Complaint survived Stewart's subsequent Motion to Dismiss. (Smiths' Br. in Opp., Doc. 132, at 8-9). In response, Stewart argues the Court would have granted his Motion to Dismiss the Amended Third-Party Complaint in its entirety had it not been for intentional omissions and misrepresentations made in the Amended Third-Party Complaint. (Stewart's Br. in Supp. at 6). Specifically, Stewart asserts the Smiths' counsel deliberately misrepresented that the Smiths were unaware that "(1) Ford's approval was required before a transfer of ownership could take place; (2) there was liability to Ford Motor Credit for cars at the dealership; and (3) there was a security interest on all vehicles to Ford Motor Credit[.]" (*See id.*).

Stewart states, "Despite repeated rulings from this Court that, from either a factual or legal standpoint, Maxwell could not be considered to be Stewart's agent for purposes of the Stock Sale Agreement, counsel for the Smiths persisted in arguing that Maxwell was Stewart's agent and that Maxwell's failures should be imputed to Stewart for purposes of their breach of contract claim." (*Id.* at 12). The Court fails to see how the Smiths' unsuccessful attempts to characterize Maxwell as Stewart's agent could have vexatiously multiplied the proceedings. As Stewart acknowledges, the Court explicitly rejected this argument when partially granting Stewart's Motion to Dismiss the Amended Third-Party Complaint and when granting his Motion for Summary Judgment. (*Id.* at 4, 9). In short, the Smiths' argument that Maxwell was Stewart's agent did not affect the course of the proceedings.

Next, Stewart asserts Smiths' counsel knowingly misrepresented that the Smiths were unaware that "(1) Ford's approval was required before a transfer of ownership could take place; (2) there was liability to Ford Motor Credit for cars at the dealership; and (3) there was a security interest on all vehicles to Ford Motor Credit[.]" (*Id.* at 6 & n.1). As proof, Stewart offers that "the Smiths had filed a complaint against Stewart and Maxwell in the Court of Common Pleas of Schuylkill County, Pennsylvania on April 14, 2008" (Stewart's Ex. G, Doc. 127-8) which predates and allegedly directly contradicts the Amended Third-Party Complaint. (Stewart Br. in Supp. at 6 n.1). Moreover, Stewart argues that in denying Stewart's Motion to Dismiss Count I, the Court relied upon allegations in the Amended Third Party Complaint that directly contradict the Schuylkill County Complaint. (*Id.*).

However, the claim of an alleged contradiction between the Schuylkill County Complaint and the Amended Federal Complaint, which acts as the primary basis[1] for Stewart's present Motion, is undermined by Stewart's Motion to Dismiss. Stewart did not argue as part of his Motion to Dismiss the Amended Third-Party Complaint that the Schuylkill County Complaint contradicted key provisions of the Amended Third-Party Complaint. Had Stewart done so, the Court would have had an opportunity to consider the argument then. If Stewart's current position has merit, then presumably it would have had merit when he filed his Motion to Dismiss the Amended Complaint. Stewart's present

---

[1] Additionally, Stewart appears to rely on the Smith's deposition testimony to demonstrate that the Smith's *counsel* knew that his clients were aware "of their liability to Ford Credit in light of the 'out of trust' issue" and that "Ford's approval was required to transfer ownership." (Stewart's Br. in Supp. at 8). However, however it cannot be said that Smith's counsel included deliberate misrepresentations in the Amended Third-Party Complaint based on his client's later deposition testimony.

assertion assumes that his Motion to Dismiss would have been granted had the Court been presented with the Schuylkill County Complaint.

Yet, Stewart provides no explanation as to why he failed to include the Schuylkill County Complaint in either of the two briefs he filed in support of the Motion to Dismiss or bring it to the Court's attention prior to the end of discovery.[2] If Stewart's claim has merit—that is, if the Schuylkill County Complaint would have affected the Court's May 14, 2012 Order, then Stewart should have raised it earlier in the proceedings. Stewart's failure to do so places at least some responsibility upon him for the progression of this case through discovery to the summary judgment stage, where he was ultimately successful. If, on the other hand, his claim has no merit, then there is no basis for Stewart's Motion for Attorney's fees. Either way, the Count cannot now, on the basis of the Schuylkill County Complaint, impute to the Smiths' counsel such a serious violation of professional responsibility as lying to the tribunal.

The Court is reticent to second guess counsel's tactical decisions and is cautioned by the Supreme Court's warning in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S. Ct. 694, 54 L.Ed.2d 648 (1978). In *Christiansburg*, the Court stated,

> [I]t is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate

[2] Although Stewart does not mention the Schuylkill County Complaint in either his Brief in Support of Summary Judgment (Doc. 100) or his Reply Brief (Doc. 111), Stewart does refer to it in his Statement of Material Facts (Doc. 99-2 at ¶¶ 28, 38, 54).

> success. . . . Even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit.

*Id.* at 421–22.

Further, not only did Stewart's Brief in Support of his Motion to Dismiss not contend the Schuylkill County Complaint conflicts with the allegations of the Amended Third-Party Complaint, Stewart's Brief actually stated that the two complaints were "virtually identical." (Doc. 61 at 25-26). Stewart asserted in his Motion to Dismiss that the Court should abstain from entertaining the Smiths' third-party claims due to the doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976). (*Id.* at 23-29). Stewart argued,

> [O]n or about April 14, 2008, the Smiths filed a complaint . . . against Stewart and Maxwell in the Court of Common Pleas of Schuylkill County, Pennsylvania. . . . Within the April 14, 2008 state court complaint, the Smiths asserted *virtually identical claims* to those set forth against Stewart in the instant action. . . . Moreover, a comparison of the Smiths' April 14, 2008 state court complaint with their instant amended third-party complaint reveals that *the amended third-party complaint mostly tracks the allegations of the state court complaint verbatim.*

(*Id.* at 25-26) (emphasis added).

Stewart cannot have it both ways. He cannot contend that the two Complaints are "virtually identical" for the purposes of purposes of his Motion to Dismiss only to argue that they are "completely contradictory" in his Motion for Attorneys' Fees (Doc. 130 at 12).

Even if the Court were to ignore Stewart's earlier argument that the Schuylkill County Complaint was "virtually identical" to the Amended Third-Party Complaint (Doc. 61 at 25-26)

and find that the two Complaints are "completely contradictory," Stewart's Motion for Attorney's fee must fail because he does not sufficiently demonstrate bad faith. Under § 1927, "sanctions may not be imposed . . . absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider*, 580 F.3d at 142. "Indications of this bad faith are findings that the claims advanced were meritless, that counsel knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *Prudential Ins. Co.*, 278 F.3d at 2002 (quoting *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1375 (6th Cir.1987) (citing *McCandless v. Great Atl. & Pac. Tea Co., Inc.*, 697 F.2d 198, 200-01 (7th Cir. 1983)).

"The principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Schaefer*, 542 F.3d at 101 (internal quotation marks omitted). As the Seventh Circuit Court of Appeals aptly stated, "[t]he only litigants who are likely to be deterred are those who are aware that their claim is baseless but press on for some improper reason, such as harassment." *McCandless*, 697 F.2d at 200. "It is only as an incidental effect that the 'bad faith' exception compensates the prevailing party for fees that should never have been incurred." *Id.*

Here, though Stewart repeatedly states that the Smiths' counsel acted in bad faith, Stewart does not ascribe an improper motive to the Smiths' pursuit of a third-party claim. The closest Stewart comes to asserting an improper motive is his assertion that the Smiths'

claims against him represent "an imprudent effort to deflect the Court's attention from the Smiths' indisputable" liability to FMC. (Br. in Supp. at 2). Stewart does not argue that the Smiths' counsel acted in an intentionally harassing or dilatory manner. Absent such an assertion, awarding sanctions would not serve the "principal purpose of sanctions under § 1927[.]" *See Schaefer*, 542 F.3d at 101.

§ 1927 sanctions are only appropriate where an attorney's actions are so outrageous and obvious to the court that it "need not use hindsight nor *post hoc* analysis" to conclude that counsel's actions were intentional and improper. *Macheska v. Thomson Learning*, 347 F. Supp. 2d 169, 175-78, 181 (M.D. Pa. 2004) (granting § 1927 sanctions where counsel's misconduct was "manifest and obvious" and where the attorney proceeded with discovery, resulting in the opposing party "incur[ring] significant costs," despite the attorney's "belief that the 'case should be withdrawn,'" which he stated in a fax to the court); *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 111 (3d Cir. 2011) (affirming § 1927 sanctions where an attorney "repeatedly violated the Court's orders, which prompted Defendants to move for a mistrial. That motion was withdrawn, however, after a conference with the judge, a curative instruction to the jury, and a promise from [the attorney] that 'his conduct would not be repeated.' Unfortunately, the direct examination of [the attorney]'s first witness provoked a flurry of objections, nearly all of which the Court sustained. This pattern continued during [the attorney]'s second direct examination. The Court found [the

attorney]'s conduct 'very disturbing,'" and granted the Defendants' second motion for a mistrial.)

Here, Stewart asks the Court wade through the docket sheet, which contains more than one hundred entries and spans nearly four years, and engage in a *post hoc* analysis to discern an illegitimate motive on the part of Smith's counsel. Although the Court is sensitive to the expense Stewart incurred to defend against the Amended Third-Party Complaint, § 1927 "does not authorize the wholesale reimbursement of a party for all of its attorneys' fees or for the total costs of the litigation." *Browning*, 931 F.2d at 344-45. It is a motion for sanctions, one that is granted only where there is "serious and studied disregard for the orderly process of justice." *LaSalle*, 287 F.3d at 288. No such conduct occurred in this matter.

## IV. Conclusion

For the foregoing reasons, the Court will deny Stewart's Motion for Attorneys' fees. A separate Order follows.

Robert D. Mariani
United States District Judge